E-FILED
Thursday, 13 June, 2013  09:16:13 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CARL TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13-CV-3060 |
| | ) | |
| MS. LYNCH, TARRY WILLIAMS, | ) | |
| SANDRA FUNK, S.A. GODINEZ, | ) | |
| And DR. LOUIS SHICKER, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, incarcerated in Western Illinois Correctional Center

("Western"), alleges that she is a transgender inmate who suffers

from serious mental health disorders.  Plaintiff alleges that her

placement at Western puts her at a serious risk of physical and

mental harm.  She seeks a transfer out of Western Illinois

Correctional Center for her safety and mental health, preferably to

Dixon Correctional Center or any other medium security prison

besides Pontiac, Galesburg, or Lawrence Correctional Center.

The Court denied Plaintiff's first motion for preliminary

injunction on March 21, 2013.  Plaintiff appealed that ruling to the

Seventh Circuit Court of Appeals and then filed in this Court what has been construed as a second motion for preliminary injunction. The Court appointed pro bono counsel for Plaintiff and held a hearing on Plaintiff's second preliminary injunction motion on April 17th, 18th, and 30th, 2013. Plaintiff's appointed counsel appeared by video conference from Urbana, Illinois. Defense counsel appeared in person. Witnesses appeared by video conference from various locations, and Plaintiff appeared by video conference from Western Illinois Correctional Center. Briefing on the preliminary injunction concluded May 15, 2013.

As explained in more detail below, Plaintiff's second motion for a preliminary injunction will be denied, primarily because the evidence does not support Plaintiff's belief that she will be any safer at a different prison. The administrators at Western Illinois Correctional Center have responded diligently to Plaintiff's safety concerns and have taken substantial steps to protect Plaintiff. Plaintiff's current therapist at Western appears to genuinely care about Plaintiff's mental health and is providing biweekly therapy. On this record, transferring Plaintiff out of Western Illinois

Correctional Center could make the situation worse for Plaintiff, not better.

Ultimately, Plaintiff may be able to establish that a systemic change in the way transgender inmates are housed in the Illinois Department of Corrections is required to avoid deliberate indifference to Plaintiff's safety and serious mental health needs. Plaintiff may also be able to establish that the refusal to provide Plaintiff with treatment for her gender identity disorder amounts to deliberate indifference to her serious mental or medical needs. However, those larger questions are not now before the Court. The only issue presently before the Court is Plaintiff's request for a transfer out of Western Illinois Correctional Center which will be denied.

LEGAL STANDARD

"[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, 549 F.3d 1079, 1085 (7th Cir. 2008)(quoted cites and internal quotation marks omitted). "To win a preliminary injunction, a party must show that it has (1) no adequate remedy at

law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits.'" ACLU v. Alvarez, 679 F.3d 583, (7th Cir. 2012)(quoted cite omitted).  After this threshold showing, the potential harms to the parties and public are weighed.  Id.

Fed. R. Civ. P. 65(d) requires an order granting an injunction to state the reasons therefore and to state with specificity the acts required.  Fed. R. Civ. P. 65(d)(1).  18 U.S.C. § 3626(a)(2) of the Prison Litigation Reform Act imposes additional requirements for preliminary injunctions dealing with prison conditions:

> (2) . . . Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . .

Section 3626(a)(2) "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions:  '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'"  Westefer v. Neal, et al., 682 F.3d 679, 683 (7th Cir. 2012)(reversing district court's injunction ordering

specific procedures before an inmate's transfer to a supermax prison).  On the other hand, "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."  <u>Brown v. Plata</u>, 131 S.Ct. 1910, 1928-29 (2011)(affirming three-judge district court order directing California to reduce its prison population to 137.5% of capacity).

## FACTS

The following facts are found for purposes of this order only.

Plaintiff is currently incarcerated in Western Illinois Correctional Center.  Plaintiff contends that she is a transgender individual.  She feels, in her words, like a woman trapped inside a man's body.  This condition is described in the DSM-IV as gender identity disorder.  American Psychiatric Association:  *Diagnostic and Statistical Manual of Mental Disorders* 576-582 (4th ed. 2000).[1] Defendants dispute whether Plaintiff actually has gender identity disorder, but Plaintiff has presented sufficient evidence for the Court to conclude that she does.

---

[1] The Fifth Edition of the DSM was published recently, but the Court is still awaiting a copy.

Plaintiff was a People's gang member before her incarceration. In fact, the reason Plaintiff is incarcerated is because she murdered another gang member.  However, Plaintiff testified that she is no longer affiliated with that gang.  According to Plaintiff, her former gang does not allow gay or transgender members.  Plaintiff maintains that she was raped in Pontiac prison in December 2010 as punishment by a gang member because the gang perceived Plaintiff as an embarrassment.  The alleged rape is the subject of another pending case by Plaintiff, <u>Tate v. Moore</u>, 12-CV-1402 (C.D. Ill., Peoria Division).  Plaintiff testified that she is in the process of formally renouncing her membership in the gang pursuant to Illinois Department of Corrections procedures, but the process is lengthy.

Dr. Reginald Adkisson is Plaintiff's prison therapist and sees Plaintiff biweekly.  Dr. Adkisson is a licensed clinical psychologist holding a Doctorate in Clinical Psychology.  He works part-time at Western and is an Assistant Professor at Western Illinois University. Dr. Adkisson has diagnosed Plaintiff with gender identity disorder and anxiety not otherwise specified with depressive features.

Dr. Adkisson's therapy sessions with Plaintiff focus on anxiety reduction and stress management, though the sessions are often devoted to discussing Plaintiff's safety concerns to the exclusion of therapy goals.  Dr. Adkisson referred Tate for an evaluation of whether medical intervention is appropriate for Tate's gender identity disorder, such as hormone treatment, but the gender identity disorder committee has recommended against medical intervention.

Dr. Koko was Plaintiff's psychiatrist and is the psychiatrist responsible for treating inmates at Western.  Plaintiff no longer sees Dr. Koko because Plaintiff no longer takes psychiatric medicines which require a prescription from Dr. Koko.

Dr. Koko has concluded based on his interactions with Plaintiff and Plaintiff's records that Plaintiff does not meet the criteria for diagnosis of gender identity disorder.  Dr. Koko's conclusion is based on his belief that, if Plaintiff truly had gender identity disorder, Plaintiff would have been persistently acting like a female from a very young age, about age three.  In Dr. Koko's opinion, Plaintiff's expression of Plaintiff's identification as a woman is not supported by Plaintiff's family and medical history.

Plaintiff testified that she is continually subjected to verbal harassment and threats at Western because of her effeminate behavior and because she has been labeled by other inmates as a snitch.  In particular, Plaintiff testified that, in early 2013, she heard other inmates plotting to assault guards.  Plaintiff testified that she sent a note to warn the guards, also known as a "kite." According to Plaintiff, after sending the kite, Plaintiff was called out over the intercom to go to internal affairs.  This incident, along with remarks Plaintiff has heard from other inmates, has caused Plaintiff to believe that a "hit" has been placed on Plaintiff for disclosing the planned assault.

Plaintiff testified that she was threatened by inmate James Brown, purportedly a known gang member, whom Plaintiff believed knew about Plaintiff's kite.  Plaintiff overheard Brown remark, "There's that sissy.  I should beat him and throw him off the top deck."  Plaintiff also asserts that three Vice Lord gang members have threatened Plaintiff with assault and rape.  Plaintiff asserts that she is harassed daily by other inmates when she goes to the dietary unit and whenever she is escorted somewhere.

Plaintiff testified in the first preliminary injunction hearing that she had been subjected to verbal harassment and threats at Western, but that no other inmate at Western had actually touched her.  However, Plaintiff testified in the second preliminary injunction hearing that her first roommate at Western had forced Plaintiff into performing oral sex.  Plaintiff testified that she had been too scared to mention this incident to anyone, out of a fear of retaliation.

Officer Jennings, who is Western's intelligence coordinator, testified that Plaintiff was not singled out for questioning about the planned assault.  Jennings testified that at least 34 interviews of inmates were conducted regarding the planned inmate assault on guards, with nine inmates providing substantiating information. The two inmates who were found to have made the threats against the guards were transferred out of Western and sent to Pontiac or Menard.  Officer Jennings was unable to substantiate a "hit" on Plaintiff.  Lieutenant Korte, who also works in internal affairs, testified that he also could not substantiate Plaintiff's claims that Plaintiff was at a serious risk of harm.  Lieutenant Korte testified

that every prison has gang members except for Taylorville Correctional Center.

The second day of the preliminary injunction hearing, April 18, 2013, the Court was informed that, sometime the night prior Plaintiff had made a "suicide gesture" by wrapping something around her neck and attaching it to the bunk bed.  Defendants offered testimony that Plaintiff's suicide gesture on April 18, 2013, was not a serious suicide attempt, pointing out that the medical records reflect only a slight red mark on Plaintiff's neck. Additionally, Dr. Koko testified that he believed that Plaintiff's actions were more of an attention-seeking, histrionic behavior, and that Plaintiff was malingering.  Plaintiff apparently also declared a hunger strike on April 18, 2013 and at first refused to talk to psychiatric personnel.  Initially Plaintiff was unable to attend the preliminary injunction hearing on April 18, 2013 because she had not been cleared by psychiatric personnel, but she was able participate in the hearing later that day after she spoke to psychiatric personnel who declared her stable enough to participate.  Plaintiff also had made a suicide gesture or attempted

suicide earlier in 2013, but the seriousness of that attempt is also debated.

Inmate Keith Carr is a bisexual inmate who was housed in Western Correctional Center from August 2012 through March 15, 2013. Carr testified that, based on his personal observations, other inmates were constantly harassing both Plaintiff and Carr. Carr testified that he was housed in Centralia Correctional Center in 2008 where he felt safe until other inmates found out about Carr's bisexuality. Carr has also been in Dixon Correctional Center in 2008 where he felt safe. In Carr's opinion, no homosexual inmate is safe in any IDOC prison.

Dr. Adkisson testified that he believed Plaintiff can receive adequate mental health treatment at Western Correctional Center. According to Dr. Adkisson, inmates sent to the psychiatric unit at Dixon Correctional Center have psychotic disorders that cannot be managed with psychotherapy and medication, such as schizophrenia, mania, and bipolar disorder. In Dr. Adkisson's opinion, Plaintiff does not belong at Dixon Correctional Center because Plaintiff's mental health problems can be managed at Western Correctional Center. The inmates sent to Dixon's

psychiatric unit are, according to Dr. Adkisson, unable to function even minimally on a daily basis.

Dr. Adkisson believes that Plaintiff genuinely fears for Plaintiff's safety, but Dr. Adkisson does not know if that fear is realistic because Dr. Adkisson is not involved in security matters. Dr. Adkisson testified that making progress in therapy with Plaintiff is difficult due to Plaintiff's consuming fear for her safety.  If Plaintiff felt safe, Dr. Adkisson testified, more progress in therapy could be made.

## ANALYSIS

Defendants argue that Plaintiff has not exhausted her administrative remedies.  However, Plaintiff filed emergency grievances about her fears on August 14, 2012 and January 25, 2013, both of which were denied at the institutional level.  In an emergency situation, that is sufficient to exhaust administrative remedies.  *See* Fletcher v. Menard Correctional Center, 623 F.3d 1171, 1173 (7th Cir. 2010)("administrative remedies that offer no possible relief in time to prevent the imminent danger from becoming an actual harm can't be thought available.").

Additionally, the health care unit's delay or failure to respond to

Plaintiff's grievances about her need for mental health treatment arguably rendered the grievance process effectively unavailable to Plaintiff.  *See* <u>Lewis v. Washington</u>, 300 F.3d 829, 833 (7th Cir. 2002)(administrative remedies are exhausted if prison officials fail to respond to grievances).  At this point, Defendants have not sustained their burden of proving that Plaintiff failed to exhaust her administrative remedies.

Moving to the merits, Plaintiff's Eighth Amendment claim for deliberate indifference to her safety requires her to show that she is at a substantial risk of serious harm.  A substantial risk of serious harm includes "risks so great that they are almost certain to materialize if nothing is done."  <u>Brown v. Budz</u>, 398 F.3d 904, 911 (7th Cir. 2005).  Plaintiff must also show that Defendants are being deliberately indifferent to that risk, meaning that Defendants were "'aware of a substantial risk of serious injury . . . but nevertheless failed to take appropriate steps to protect him from a known danger.'"  <u>Smith v. Sangamon County Sheriff's Dept.</u>, --- F.3d ---, 2013 WL 168890 (7th Cir. 2013).

This is a high burden, but for purposes of her preliminary injunction motion Plaintiff need show only a "better than negligible"

chance of success to meet the "some likelihood of success" threshold requirement.   Chicago Dist. Council of Carpenters Pension Fund v. K&I Construction, Inc., 270 F.3d 1060, 1064 (7th Cir. 2001)("In a typical case, the plaintiff initially must establish a better than negligible chance of succeeding on the merits and the inadequacy of legal remedies.").  The strength of the claim is weighed more closely during the harms-balancing part of the analysis.  Girl Scouts v. Manitou Council, Inc. v. Girl Scouts of the U.S., 549 F.3d 1079, 1100 (7th Cir. 2008)("The more likely it is that [Plaintiff] will win its case on the merits, the less the balance of harms need weigh in its favor.").

In the Court's opinion, Plaintiff has demonstrated a better than negligible chance of succeeding on her claim that her physical safety and mental well-being is at a substantial risk of serious harm.  Plaintiff's evidence allows an inference that inmates repeatedly harass and threaten to assault and rape her and that she was coerced into performing oral sex on one of her roommates. Observing Plaintiff's effeminate and emotional behavior at the preliminary injunction hearing, the Court has little difficulty concluding that Plaintiff's physical safety is at risk in just about any

IDOC prison housing male inmates.  As for Plaintiff's mental health,

Plaintiff has attempted suicide or made suicide gestures twice while

at Western Illinois Correctional Center.  She appeared emotionally

fragile and distraught for much of the hearing.

However, no evidence presented thus far suggests that the

Defendants working at Western have been deliberately indifferent to

Plaintiff's safety or mental health.  As the Court stated in its prior

order (d/e 15):

> Warden Williams and his staff have taken Plaintiff's
> fears seriously.  Warden Williams has and continues to
> enlist staff in the health care, internal affairs, and mental
> health to address Plaintiff's issues.  Plaintiff has been
> placed on the safest wing in the prison.  This wing
> houses inmates who are responsible and trustworthy
> enough to hold top prison jobs.  Common areas at the
> prison like the cafeteria, day room, yard, and library are
> supervised.  The only unsupervised area is the shower
> room, which is part of the day room.  Warden Williams
> agreed at the hearing to allow Plaintiff to shower by
> himself, outside of the regular shower times.

After the first preliminary injunction, Plaintiff was moved to another

wing, but the wing she was moved to also houses inmates who work

in dietary, coveted jobs reserved for the more responsible inmates.

As to the coercion by Plaintiff's first roommate, Plaintiff admits

that Plaintiff told no one about a potential danger from that

roommate.  Nor did Plaintiff tell anyone about that incident until Plaintiff testified at the preliminary injunction hearing.  Each time Plaintiff has informed Defendants of a roommate problem, Defendants have responded promptly and appropriately, finding another suitable roommate after considering a myriad of factors to ensure Plaintiff's safety.  Additionally, Defendants have conducted multiple internal affairs investigations based on Plaintiff's fears. Defendants cannot eliminate all verbal harassment and verbal threats from other inmates without completely isolating Plaintiff. Yet Plaintiff agrees that that kind of isolation would place Plaintiff at a greater suicide risk and harm her mental health.  In short, Western officials appear to be doing all they can to ensure Plaintiff's safety.

Plaintiff believes she will be safer and receive the mental health treatment she needs at Dixon Correctional Center, but the evidence in the record does not support that inference.  Plaintiff does not suffer from the psychiatric diagnoses which warrant a transfer to the Dixon psychiatric wing.  Plaintiff contends that she could be placed with the general population at Dixon Correctional Center, but no evidence suggests she will be safer there or will

receive more or better mental health treatment.  Plaintiff admitted that inmates from Plaintiff's former gang may be housed at Dixon Correctional Center.

Lastly, a transfer to Taylorville Correctional Center, the only prison without gang members according to Defendants, is not yet possible.  Only inmates with no gang affiliation and with 10 years or less remaining on their sentences are eligible for housing in Taylorville Correctional Center.  Plaintiff has almost thirteen years left on her sentence, and she has not yet completed the gang renunciation process.

In short, Plaintiff's options are limited.  The Court has no evidence that a transfer out of Western Correctional Center to any other IDOC prison will help Plaintiff.  Plaintiff has not shown that she will suffer irreparable harm without a transfer because, on this record, a transfer will not reduce the harm Plaintiff faces.

However, the fact that Plaintiff's options for safe housing are so limited suggests a systemic deliberate indifference to Plaintiff's plight by the Director of the Illinois Department of Corrections, Defendant Godinez.  One can argue that a constitutionally-adequate response in the face of Plaintiff's transgender status and

serious mental health needs would be to set aside a separate wing
for inmates like Plaintiff.  *See, e.g.,* "Rules Regarding Transgender
Inmates Continue to Change," www.correctionalnews.com
(12/05/12 article, attached).  Or, as Plaintiff argued in her motion
for preliminary injunction, another option might be the
establishment of protective custody at medium security prisons.
Other options might include making an exception to the policy
regarding Taylorville Correctional Center or placing Plaintiff in a
women's prison.  *See, e.g.,* "For Transgender Detainees, a Jail Policy
Offers Some Security," www.nytimes.com (12/22/11 article,
attached).  The Court is not suggesting at this point that any of
these options are constitutionally required or even feasible.  No
evidence has been submitted on these issues yet.  The Court is only
pointing out that, even if the officials at Western have not been
deliberately indifferent, the IDOC Director could still be deliberately
indifferent by turning a blind eye to a substantial risk of serious
harm presented to Plaintiff by IDOC housing policies.

   An inference of deliberate indifference also arises against Dr.
KoKo and others who have refused Plaintiff's requests for treatment
for her gender identity disorder.  Dr. Koko is not currently a

Page **18** of **21**

Defendant, though, and exactly what that treatment should be is not in the record. The only issue presently before the Court is whether the Court should order Plaintiff's transfer to another prison.

In sum, Plaintiff's preliminary injunction motion will be denied, but this case is far from over. Complex and novel claims remain that deserve full development.

IT IS ORDERED:

1) Plaintiff's second motion for a preliminary injunction/temporary restraining order is denied (d/e 38).

2) Plaintiff shall have until July 31, 2013 to file an amended complaint.

3) A conference is scheduled for August 12, 2013 at 10:00 a.m. to discuss setting new discovery deadlines and a trial date. Local counsel shall appear in person. Plaintiff's counsel shall appear by phone or video conference if available. Plaintiff shall appear by video conference. The clerk is directed to issue a video writ to secure Plaintiff's presence at the conference.

4)	If Plaintiff's counsel wish to speak to Plaintiff using the Court's video conference equipment in Urbana, Plaintiff's counsel may contact the clerk in Urbana to make those arrangements.

5)	Plaintiff has filed a pro se petition to proceed in forma pauperis on her appeal of the Court's denial of Plaintiff's first motion for a preliminary injunction.  The Court does not see a good faith basis for an appeal of the denial of Plaintiff's first motion for a preliminary injunction.  An appeal taken in "good faith" is not about the movant's sincerity or motivation.  A good faith appeal is an appeal that "a reasonable person could suppose... has some merit." Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000).  However, Plaintiff may submit a brief explaining her grounds for appeal by July 5, 2013, after which the Court will make a final ruling. Meanwhile, this case will continue.  Chrysler Motors Corp. v. International Union, Allied Indus. Workers of America, AFL-CIO, 909 F.2d 248, 250 (7th Cir. 1990)("An interlocutory appeal does not divest the district court of jurisdiction."); 11A Federal Practice and Procedure § 2962 (2d Ed) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the

appeal is pending.")  Plaintiff may file her brief to support her

appeal pro se since her attorneys' appointment is limited to the

proceedings before this Court.

ENTER: June 13, 2013
FOR THE COURT:


**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE